[Crim. No. 790. Second Appellate District, Division One.—April 29, 1921.]

## In the Matter of the Application of MRS. A. ARATA for a Writ of Habeas Corpus.

[1] PUBLIC HEALTH—QUARANTINE OF DISEASES—POWER OF AUTHORITIES.—While the health authorities possess the power to place under quarantine restrictions persons whom they have reasonable cause to believe are afflicted with infectious or contagious diseases coming within the definition set forth in section 2979a of the Political Code, personal restraint can only be imposed where, under the facts as brought within the knowledge of the health authorities, reasonable ground exists to support the belief that the person is afflicted, and as to whether such order is justified will depend upon the facts of each individual case.

[2] ID.—RESTRAINT OF LIBERTY—CLAIM OF QUARANTINABLE DISEASE—POWER OF HEALTH AUTHORITIES—BURDEN OF PROOF.—Where a person restrained of his liberty under a claim of having an infectious or contagious disease questions the power of the health authorities to impose such restraint, the burden is immediately upon the latter to justify by showing facts in support of the order.

[3] ID.—ORDER OF QUARANTINE—MERE SUSPICION INSUFFICIENT.—A mere suspicion unsupported by facts giving rise to reasonable or probable cause affords no justification for depriving persons of their liberty and subjecting them to virtual imprisonment under a purported order of quarantine.

[4] ID.—QUARANTINE FOR VENEREAL DISEASE—BURDEN OF PROOF—HABEAS CORPUS.—Where the health authorities rely upon the claim that a person quarantined is a prostitute and hence likely to be afflicted with venereal disease, the burden of proof is upon them to establish the fact that the person is of that class and character, and in the absence of such proof, she is entitled to her discharge on *habeas corpus*.

APPLICATION for a Writ of Habeas Corpus to secure release from detention by a city chief of police. Granted.

The facts are stated in the opinion of the court.

James W. Groom, Paul W. Schenk, Frank Dominguez and Richard Kittrelle for Petitioner.

4. Right of one detained under quarantine to writ of *habeas corpus*, note, 2 A. L. R. 1542.

E. W. Widney and Harry A. Mock for Respondent.

THE COURT.—*Habeas corpus* to determine the right of respondent to detain petitioner and deprive her of her liberty. Upon return being made to the writ and hearing had thereon, petitioner's prayer was granted and her discharge ordered by decision heretofore made from the bench. That the reasons for the decision may be made to fully appear, this opinion is now filed.

In the petition filed herein it was alleged that respondent, chief of police, detained and confined in the city prison of Los Angeles the petitioner, and that said detention and imprisonment was without process of law or lawful authority. It was further alleged that petitioner was arrested without a warrant, by persons claiming to be police officers of the city of Los Angeles, on the ninth day of April, 1921, and that two days later a complaint was filed in the police court charging petitioner with a violation of the provisions of an ordinance of said city, which ordinance, stating its terms generally, was one making it an offense for a woman to commit an act of prostitution. The petition further set out that thereupon the petitioner was arraigned in said police court, entered a plea of not guilty, and that her trial was set for a certain date; that bail was fixed in the sum of fifty dollars, which, it was alleged, petitioner furnished, and that she thereupon secured an order from said police court directing her discharge from custody pending said trial; that the written order of release so secured was presented to the jailer of the Los Angeles city jail and that the jailer refused to discharge said person for the reason, as stated by him, that the health department of the city of Los Angeles had instructed the jailer and chief of police not to release petitioner until she had submitted to an examination desired to be made by said health department for the purpose of determining whether she was infected with a communicable, infectious or quarantinable disease. In the petition it was further asserted that petitioner was not infected with any such disease; that the health department of the city of Los Angeles had no reason to believe that she was so infected; that she had never been theretofore arrested or charged with any crime; that she was not, and never had been, a prostitute, and did not com-

mit the act charged against her by the complaint in the police court. Upon the alleged facts so stated no question can be made but that petitioner's detention by the chief of police was wholly unauthorized and without any warrant in law. In the return made to the writ respondent admitted that petitioner was being detained by him in said city jail and then proceeded to narrate alleged facts in evidentiary form as to a certain police officer having been directed to a room occupied by petitioner wherein petitioner offered to commit an act of sexual intercourse with said officer and fixed a price therefor, which the officer paid, whereupon other officers, acting in conjunction with the first, broke in the door and arrested petitioner. The return next set out the terms of the ordinance which purports to make the commission of the alleged act an offense. The return further set forth that immediately upon being arrested said petitioner was "by order of the health department of said city," placed in a quarantine ward in the city jail and there held "in quarantine to be examined by officers of the health department of said city, to determine her freedom from contagious or infectious quarantinable venereal disease, as provided by statute and the rules of the state board of health of the state of California." It was further stated in said return that a physician duly appointed as a medical examiner of women by the health department of said city and by order of the health commissioner visited petitioner for the purpose of making a medical examination to determine the existence of any such disease as has been described, and that petitioner refused to submit to the examination, and that the health commissioner ordered that she be held in quarantine pending the determination of her freedom from such disease. Further statement is made in the return that "the health department of the city of Los Angeles has determined from experience in a large number of cases that over ninety per cent of all women apprehended in the commission of acts of prostitution are infected with contagious or infectious quarantinable venereal disease such as is enumerated, in section 2979a, Political Code; that the rules of the state board of health adopted pursuant to section 2979, Political Code, require that the health commissioner of the city of Los Angeles cause examination to be made of all such persons to determine their freedom from

such disease.'' Referring briefly first to the duty of the chief of police and officers working under his direction, it is enough to say that the plain and unmistakable terms of the law require such officers, upon making the arrest of a person on a criminal charge, to take such person before a magistrate without delay, where the accused may be arraigned upon a sworn complaint and secure a judicial hearing. The magistrate, in the case of petitioner, acted strictly as his duty required of him in fixing bail and giving the order for release of petitioner pending trial, and as we shall proceed to show, the right of the chief of police to further detain the petitioner must be justified on grounds having no reference at all to the fact that an accusation had been made in the police court charging petitioner with a crime. [1] That the health authorities possess the power to place under quarantine restrictions persons whom they have reasonable cause to believe are afflicted with infectious or contagious diseases coming within the definition set forth in Political Code, section 2979a, as a general right, may not be questioned. It is equally true that in the exercise of this unusual power, which infringes upon the right of liberty of the individual, personal restraint can only be imposed where, under the facts as brought within the knowledge of the health authorities, *reasonable ground exists to support the belief* that the person is afflicted as claimed; and as to whether such order is justified will depend upon the facts of each individual case. [2] Where a person so restrained of his or her liberty questions the power of the health authorities to impose such restraint, the burden is immediately upon the latter to justify by showing facts in support of the order. It might be proved, for instance, that the suspected person had been exposed to contagious or infectious influences; that some person had contracted such disease from him or her, as the case might be. Such proof would furnish tangible ground for the belief that the person was afflicted as claimed. [3] And we wish here to emphasize the proposition, which is unanswerable in law, that a mere suspicion, unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all for depriving persons of their liberty and subjecting them to virtual imprisonment under a purported order of quarantine. Coming, then, to a case where it is claimed that the person

suspected is one whose habits are such as to warrant the belief that they are afflicted with a venereal disease: We may agree that in cases of persons who commit acts of prostitution—that is, acts that are commonly understood to fall within the "commercial vice" definition—such a majority of them may be afflicted with infectious venereal disease as to justify the health department in enforcing the preliminary quarantine measures as here shown against any such; in other words, that, based upon the experience of the health authorities as it is stated to be in the return, it is reasonably probable that a person found to be of the *class mentioned* is so infected with such disease. The presumption which this statement allows to be made as against the individual in the first instance has its foundation in the fact that women of ill fame, by the very nature of their occupation, indulge in repeated and promiscuous acts of sexual intercourse. We have held heretofore (*In re Milstead*, 44 Cal. App. 239, [186 Pac. 170]) that this inference which the health authorities seek to draw was not a fairly reasonable one to be deduced under proof of sexual acts between individuals charged under an ordinance of the city of Los Angeles forbidding intercourse between unmarried persons, which ordinance had as its intent the prevention of hotels and lodging-houses being resorted to for such purpose. The distinction that is suggested between the two classes of cases is apparent and requires no argument to illustrate the reason for it. [4] If the health authorities rely upon the claim that the person quarantined is a prostitute and hence likely to be afflicted with disease, then the burden is on the quarantine officers to establish the proof of the claim that the accused is of the class and character mentioned. If such person has been legally convicted of being of such class and character, the record of conviction may be relied upon to establish the important fact. In the absence of such conviction, the burden will be with the health authorities to establish the fact by sufficient evidence; for it is the existence of that condition in the person suspected that furnishes the ground for the belief, as an inference only, that the disease exists. It will not do to allow the inference of probable cause to be drawn from a mere suspicion.

We have gone to the pains of making clear our view of the law in the case under discussion. The health authorities,

with capable counsel at their elbow, no doubt are well advised of the limitations attached to their powers as they have been herein stated to be. One of the most important rights guaranteed under our constitution, that of the liberty of the citizen, is involved and cannot be lightly passed over, nor can encroachments upon that right be tolerated even under the argument that, in the main, the general result sought is a beneficent one. The law may not be set at defiance, even to subserve the best intentioned effort; much less by officers who have taken an oath to uphold it. At the hearing of this writ proof was not offered to be made that petitioner was at the time of her arrest a woman of ill fame. The narrative contained in the return, of alleged acts in which the police officer took part, cannot be taken as proof that the charge made against petitioner in the police court was true.

No sufficient cause has been shown authorizing respondent to detain petitioner in his custody.