No. 36,984

PAULINE WELCH, *Petitioner*, v. GEORGE W. SHEPHERD, Chief of Police of the City of Wichita, et al., *Respondents.*

No. 36,985

FERN WELCH, *Petitioner*, v. GEORGE W. SHEPHERD, Chief of Police of the City of Wichita, et al., *Respondents.*

(196 P. 2d 235)

Opinion filed July 10, 1948.

*Laurence S. Holmes,* of Wichita, argued the cause, and *Waldo B. Wetmore* and *Dale Bruce,* both of Wichita, were with him on the briefs for the petitioners.

*Fred W. Aley,* of Wichita, argued the cause, and *Eugene G. Coombs* and *Max L. Hamilton,* both of Wichita, were with him on the briefs for the respondents.

The opinion of the court was delivered by

SMITH, J.: These are two original petitions in habeas corpus. The petitioners are sisters and alleged that they were being held in

the city jail of Wichita without proper authority. We ordered them released on bond on May 28, 1947, and gave the respondents until the 7th of June, 1947, to either discharge them or show cause why they should not do so. In due time the respondents filed answers. To these answers the petitioners leveled motions asking that they be made more definite and certain, and that paragraphs be stricken. The respondents filed motions for judgment on the pleadings. We consolidated the cases and set them for argument on July 7, 1947. An oral argument was had at that time without the benefit of a brief from any of the parties and with an incomplete record. In due time briefs were filed and on consultation it appeared voluminous typewritten records and briefs were involved and it was difficult to ascertain the precise legal point. Accordingly the cases were set for reargument on June 11, 1948, and the parties ordered to print their briefs and such portions of the record as they desired to call to the court's attention. This was done, the cases reargued and are now ready for final decision on the motion for judgment.

With the exception of one detail the petitions are identical. The one filed by Fern Welch will be stated for the purpose of this opinion.

The action is against the chief of police, certain members of the police department, whose names are unknown to petitioner, and the city health officer. After the official identification of the parties the petitioner alleged that the respondents had conspired to deprive her of her liberty, in violation of the constitution and the laws of the state and the United States; that about May 6, 1947, at about 3:30 a. m., she was arrested by a member of the police department of Wichita and immediately placed in the city jail; that she had been informed orally she had been arrested on the charges of "vagrancy" and "drunkenness" and in the case of one of the petitioners with "liquor in possession" and subsequently was informed orally that general charges of "request for interne" had been lodged against her; that she had been held in jail ever since without being admitted to bail and without a speedy or public trial; that she had been denied right of counsel or right to be attended by a physician as she had requested and that she had been cajoled, promised and threatened to obtain from her unlawful examinations of her person in violation of her privacy, all without any legal justification, provocation or excuse, and that she believed she would be further restrained and deprived of her freedom and not admitted to bail or

have a lawful hearing for an indefinite and extended period for the purpose of compelling her to submit to this examination; that she knew of no lawful order of commitment, extradition, order of quarantine or order of isolation by which she was being held; that she had committed no capital offense for which no bail was allowed.

She alleged she was making the application for this writ because she had applied for a writ of habeas corpus to the district court of Sedgwick county and it had been denied, and she had filed a petition for a writ of habeas corpus to the federal district court and it had been denied, and she was bringing a direct action rather than appealing because of delay. She then alleged that she was not under any order of isolation or quarantine and had been told she was being held on an oral order of the city health officer, which order was to the effect that she was to be kept in the city jail until she would submit to a physical examination. She prayed for the allowance of a writ requiring the officers to bring her to this court and state the true cause of her detention so this court might give such judgment as to it might seem just and proper.

On a day set the respondents filed their return to this writ, in which they stated that petitioner was being held in isolation and quarantine by order of the city health officer and for violation of the ordinance of the city; that on the 28th day of May, 1947, following our order she had been released pending the outcome of this case. The return then alleged that she was arrested on May 6 by a policeman and charged with "vagrancy" and "drunkenness" and "liquor in possession," in violation of certain ordinances of the city, which were pleaded; that following her arrest she was referred and reported to the health officer by means of a "request for internment" and as suspected by the police department as having a venereal disease. A copy of this request for internment was attached to the return. That the policeman also submitted a copy of his report to the arresting officer, which was also attached to the return; that upon receipt of these reports and "request for internment" the health officer found there were reasonable grounds to believe that petitioner had or could have a contagious or infectious venereal disease for the reason she had been frequenting places bearing a poor reputation, associating with persons of low moral character and had been found upon numerous occasions intoxicated in places bearing poor reputations and accompanied by men having

poor reputations, and had been found on the streets of the city of Wichita at all times of the night where women of good reputation are not found, and had been conducting herself in an unlawful and degrading manner in and upon the streets and the businesses located in the city of Wichita, Sedgwick county, Kansas, and had been referred to him by the police department of the city of Wichita as suspected of having a venereal disease. The return then alleged that the city physician acting upon this information had ordered petitioner held for examination for venereal disease and quarantine and isolation in the city jail of Wichita to protect the public health in accordance with the regulations of the board of health and ordinances of the city of Wichita until an examination could be made. A copy of the pertinent sections and provisions of the rules and ordinances was attached. The return also alleged that petitioner had at all times refused to be examined for venereal disease by the city health officer or by any reputable physician of her own choosing, and prior to our order releasing her on bond had been quarantined and held for examination as being dangerous to the public health.

The respondents then stated a petition had been filed in the district court of Sedgwick county and stated that following her arrest on charges of liquor in her possession, vagrancy and drunkenness, bond had been set for her appearance in police court, Wichita, Sedgwick county, and she had not offered to make bond. They denied she was a resident of Wichita or that they had unlawfully or illegally acted in concert to deprive her of her rights and further denied that petitioner was denied right of counsel and stated that when she requested a physician after her arrest that she was in a drunken and intoxicated condition and denied she had been cajoled, promised and threatened during her confinement and denied each and every allegation of the petition which had not been admitted.

The respondents prayed that the court order her returned to the custody of the chief of police to stand trial for liquor in possession and vagrancy and drunkenness, after the order of the city health officer that she should be examined had been satisfied. The petitioners in each case filed a motion setting forth eight respects in which they wished the answer to be made more definite and certain and also a motion setting out three distinct paragraphs of the answer they asked to have stricken.

To each of the petitions the respondents filed a motion for judgment on the pleadings. This motion set out six grounds upon which the petitioners were not entitled to the relief sought. These grounds are as follows:

"1. The petitioner's application raises no issue of fact and fails to state any grounds for releasing petitioner from confinement, isolation and quarantine by the City Physician of Wichita, Kansas.

"2. The petitioner's application does not state facts sufficient to warrant the discharge of the petitioner from custody.

"3. The petitioner failed and refused to exhaust her proper remedies of appeal to the local Board of Health to obtain her release from custody if she is not diseased.

"4. The petitioner failed to exhaust her remedies of appeal from the District Court of Sedgwick County, Kansas, where a prior adjudication based on the same facts as here relied on was had and an application for petitioner's release on a Writ of Habeas Corpus was denied.

"5. Habeas Corpus is not the proper remedy to obtain petitioner's release from the custody of respondents, as petitioner's release endangers the public health and the health of petitioner.

"6. That the order of J. E. Wolfe, City Health Officer, in ordering the quarantine, isolation and confinement of petitioner was an order based on administrative findings of fact by the said J. E. Wolfe, City Health Officer, and said findings of fact are conclusive upon a reviewing Court and not within the scope of its reviewing powers."

It will be noted that the term "venereal disease" is not mentioned in the petitions.

The only pleadings in these cases are the petitions, the answers of respondents and the two motions, to which reference has been made. We are considering respondent's motion for judgment on the pleadings. Under the circumstances, such a motion is tantamount to a general demurrer to the petition, that is, it admits the truth of all the facts pleaded in the petition. The answer of respondents does not avail the respondents in the consideration of such a question. (See *Dixon v. Fluker,* 155 Kan. 399, 402, 125 P. 2d 364; *James v. Metropolitan Life Ins. Co.,* 155 Kan. 377, 125 P. 2d 369; *Ryan v. Ryan,* 156 Kan. 348, 133 P. 2d 119; and *Pennington v. Kross,* 154 Kan. 667, 121 P. 2d 275.)

When we examine the petition with the above rule in mind we find that much has been said in the arguments that really does not bear on the question before us. To make this clear we shall again critically examine the petition.

The first two paragraphs identify the parties. The third para-

graph states petitioner is being deprived of her liberty, in violation of constitutional rights and is simply a conclusion. The fourth paragraph says petitioner was arrested May 6 without a warrant and placed in jail. The fifth paragraph says she was orally informed that she was being held under charges of vagrancy, drunkenness, liquor in possession, and a new term to us "request for interne" and that she had been held ever since without being admitted to bail and without any speedy or public trial and without charges being filed, and had been denied right to counsel and to be attended by a physician, and that she had been cajoled, promised and threatened in order to obtain an unlawful examination of her privacy, without any justification. The paragraph then contained an allegation that petitioner believed she would be deprived of her freedom, not admitted to bail or have a lawful hearing for the purpose of compelling her to submit to the unlawful orders of the city health officer. The sixth paragraph states that she did not know of any lawful order of commitment, order of quarantine or of isolation by which she was being held. The seventh paragraph told about her attempts to secure release on a writ of habeas corpus from the district court of Sedgwick county and the federal district court and the denial of relief there. The eighth paragraph stated that she had been informed that she was not under any order of isolation or quarantine but was told that she was being held under an oral order of the city health officer until she would submit to a physical examination of her person and her imprisonment would continue indefinitely and until two days after she had submitted to such examination and with the threat that such confinement shall be for an indefinite time. The arrest occurred May 6, 1947, and the petitioners were released on bond by us twenty-two days later, or on May 28.

Defendants denied many of these allegations and offered pleadings intended to explain the others. On a strict consideration of this motion, however, we are not concerned with these denials and explanations. The truth of the allegations of the petition is admitted. In such a situation we have then a simply story of a young woman arrested and placed in jail and held there for twenty-two days without being charged with any offense, without being offered a trial and without being offered release on bond. As thus simply stated, it is clear they are wrongfully detained and were entitled to be released.

The whole plan of police courts is to provide speedy trials for alleged offenders.

G. S. 1935, 13-604, provides, as follows:

"The judge of the police court shall be a conservator of the peace, and court shall be open every day at the police-court room, except Sunday, to hear and determine any and all cases cognizable before said court, and the court shall have power to bring parties before it forthwith for trial, upon complaint duly made."

Where a warrant is issued by the police judge for the arrest of one against whom a complaint has been made, the police judge at the time of issuing the warrant must fix the amount of the bond. (See G. S. 1935, 13-606.) The police judge must hear and determine the complaint. (See G. S. 1935, 13-607.) Trial of a case may be continued without consent of the accused for good cause but never for more than ten days and then the defendant must be given an opportunity to give bond for his appearance. (See G. S. 1935, 13-608.) Of course a reasonable time must be given the city to prepare a case but it must be no more than reasonable, and in any event one charged with violation of a city ordinance is entitled to be released on bond at once. Certainly twenty-two days is an unreasonable length of time to hold one in a city jail without trial and without being offered release on bond. It follows that on the bare face of the record in this case the motion of respondents for judgment on the pleadings should be denied and the writs should issue.

On account of some admissions in the briefs of all parties, however, and because this is an original petition in habeas corpus, we have concluded to examine the matter further.

The respondents pleaded that these two petitioners were being held for examination because the city health officer had reason to believe that they had or could have a venereal disease. They pleaded and argued that this belief on the part of the city health officer came from a report of the arresting officer. Much is said in the briefs about the significance to be given by the health officer to this report and "the request for interne" directed to the health officer and signed by the arresting officer. These documents are not before us, however, as a part of the record. There is enough before us, so that we may state the position of respondents to be that when the health officer has reasonable grounds for believing a woman is infected with a venereal disease he may order her held until she submits to an examination.

All parties argue as though the record presented the question of whether the city health officer had reasonable grounds to find that these petitioners had or could have had a venereal disease. On that issue the petitioners have filed with us several affidavits setting out what they claim to be the facts and circumstances surrounding their arrest and the treatment accorded them after their arrest. These are intended to dispute the truth of the statements in the answers of respondents. They are not part of the record. On consideration of a motion for judgment on the pleadings directed at the petition they will not be considered in this opinion.

We must consider the case on the somewhat narrow question of whether the proper way for officers to proceed to do their duty toward the public health on the one hand and the suspected individual on the other in the way of securing an examination of the suspected person is to hold him or her until he or she consents to be examined.

With the above in mind, we shall proceed to examine the arguments of counsel as they are presented.

Respondents first argue their motion for judgment on the pleadings should have been sustained because the petitions raise no issue of fact and fail to state any grounds for releasing petitioners from confinement.

In this argument respondents first state the allegations of the petition about as we have stated them. The brief then contains the following statement:

"These allegations raise no issues of fact and fail to state any grounds for releasing petitioners, inasmuch as the City Health Officer is empowered by the Statutes of Kansas, Ordinances of the City of Wichita and the laws, rules and regulations relating to communicable and other reportable diseases, to order petitioners to be held for examination, where it is reported to him by police officers or other persons, and he has reasonable grounds to believe that said persons are infected with a venereal disease. . . ."

There is nothing whatever in the petition about venereal disease, as has already been pointed out. Strictly speaking, such an argument has no place in our consideration of this case. This is just as good a place as any, however, to pass on the real question at issue between these parties. So we shall consider the motion as though the petition stated that petitioner had been informed that the examination for which petitioner was being held was for venereal disease.

Respondents rely first on the provisions of G. S. 1935, 65-128, rules of the state board of health, issued pursuant thereto, and

certain ordinances of the city of Wichita relating to the public health. The section of the statute to which reference is made provides, as follows:

"For the better protection of the public health and for the control of communicable diseases, the state board of health shall designate such diseases as are infectious, contagious or communicable in their nature and the state board of health is herewith authorized to make and prescribe rules, regulations and procedures for the isolation and quarantine of such diseases and persons afflicted with or exposed to such diseases as may be necessary to prevent the spread and dissemination of diseases dangerous to the public health. Such rules, regulations and procedures shall be published in the official state paper, and when so published shall be in full force and effect."

This section has been held by us to be not unconstitutional. (See *In re McGee, Petitioner,* 105 Kan. 574, 185 Pac. 14.) Pursuant to it, the state board of health has promulgated rules and regulations dealing amongst other things with venereal disease. These regulations cover a wide range of subjects.

Rule 11,337, Rules and Regulations State Board of Health, pertaining to communicable and other reportable diseases, is as follows:

"SECTION 1. Local county and city health officers throughout the state and deputy state health officers appointed for that purpose are hereby authorized and directed to use every available means to ascertain the existence of and immediately investigate all suspected cases of syphilis in communicable form, gonococcus infection or chancroid within their respective jurisdictions, and to ascertain the source of such infections.

"SECTION 2. In such investigations said local health officers, deputy state health officers, or their duly authorized representatives, are hereby vested with full powers of inspection, examination, isolation, and disinfection of all places, persons and things, and as such inspectors, said local health officers, deputy state health officers or their duly authorized representatives, are hereby authorized:

"I. To make examinations of all persons reasonably suspected of having syphilis in communicable form, gonococcus infection or chancroid. Owing to the prevalence of such disease among pimps and prostitutes, all such persons may be considered in the above class.

"II. To isolate such person whenever in the opinion of said local health officer, deputy state health officer, the State Board of Health or its secretary, isolation is necessary to protect the public health. In establishing isolation the health officer shall define the place and the limits of the area in which the person reasonably suspected or known to have syphilis, gonococcus infection or chancroid, and his or her attendant, are to be isolated, and no persons, other than the attending physicians, shall enter or leave the area of isolation without the permission of the health officer having jurisdiction: *Provided,* That women may be quarantined at the Kansas State Quarantine Hospital for Women at Lansing: *Provided further,* That in any case where quarantine for venereal disease is contemplated

or ordered after an examination or examinations by the health officer, the infected persons may appeal to the local board of health in writing for another examination or examinations to confirm the diagnosis. The local board of health may require the persons making such appeal to pay the cost thereof, and to deposit with the written appeal a sum not exceeding $10 for the purpose. Upon receipt of such written appeal, accompanied by the required fee to cover the cost of such examination, the local board of health shall appoint another physician to consult with and assist the health officer in making such additional examination or examinations as may be necessary to reach an agreement as to diagnosis. The local board of health may waive the following fee of ten dollars if, in their discretion, the appellant is unable to pay the same. Specimens for laboratory tests taken in the additional examination or examinations shall be sent to the state laboratory. Infants or little girls requiring a mother's attention should not be sent to the Lansing Quarantine Home."

The city ordinances with which we are concerned are as follows: Ordinance No. 6009, section 1, which provides as follows:

"The term 'venereal disease' as herein used shall be construed to be syphilis, gonococcus infection and chancroid, and the same are hereby defined, recognized and declared to be contagious and infectious, communicable and dangerous to the public health of the City of Wichita."

Section 8 provides as follows:

"It is hereby made the duty of the City Physician and he is hereby directed and empowered: (a) To make examinations of persons reasonably suspected of having syphilis in the infectious stages, or gonococcus infection (owing to the prevalence of such disease among prostitutes, all prostitutes may be considered within the above class)."

Respondents argue they acted pursuant to the ordinance quoted and that it authorized their course of action. If the question before us were the validity of these ordinances and the right and duty of the city health officer to examine persons suspected of having a venereal disease our decision would be easy. We have heretofore upheld the action of the health officer taken pursuant to such ordinances.

Amongst other cases in which we have considered the duty of the local health officer with reference to people suspected of having a venereal disease is *In re Mary Irby, Petitioner*, 113 Kan. 565, 215 Pac. 449. In that case Mary Irby had been examined, found to be infected with gonorrhea and directed to be quarantined at the Kansas State Hospital for Women at Lansing. She invoked a section of the Wichita city ordinance, which provided that in lieu of isolation or quarantine the person found to be infected might be released if she would state under oath that she was not a prostitute and file a bond conditioned that she would not perform any act

that would expose any other person and would take proper medical treatment and abide by the rules of the city physician. The section also provided that before she was released as cured a physical examination and approval of the city physician must be secured. She had complied with this section and applied to the city physician for release and her release had been denied, whereupon she brought habeas corpus. The question we decided in that case was whether the ordinance provided it was the absolute duty of the city physician to release her when she had given bond, or did he have some discretion in connection therewith? We stated:

"As the application is addressed to the city health officer he is the proper person to pass upon the question of fact, his decision being final if made in good faith, but subject to be set aside for fraud, oppression or arbitrary conduct." (p. 567.)

We pointed out further in the opinion that it was the duty of the city physician to consider her affidavit since she alleged that he had refused to consider it. We withheld denial of the writ until assured that the health officer had examined and denied the application on its merits.

It may readily be seen that the above case is not in point here since these two petitioners never have been found to be infected with a venereal disease or any other disease.

Respondents also rely upon what we held in *Noland v. Gardner*, 156 Kan. 697, 136 P. 2d 233. In that case the petitioner had been examined and found to be infected. She alleged in her application she was not infected and sought to relitigate in this court the question of her physical condition. We pointed out the provision in the rules of the state board of health providing that one dissatisfied with the finding of the examining physician as to his condition must appeal to the local board of health. We pointed out that since the petitioner had not done that she had not exhausted her legal remedy and habeas corpus was not available to her.

That case differs from the one we are considering since there the examining officer in the first instance had found the petitioner to be infected.

We also considered these rules in *In re Hoober*, 132 Kan. 224, 294 Pac. 678. In that case also the petitioner claimed that the city health officer had found her to be infected when she actually was not infected. We pointed out that the proper procedure in such a case was to the local board of health.

No good purpose would be served by pointing out any further

cases in which we have upheld the rules of the state board of health, as well as city ordinances, with reference to venereal diseases. We find nowhere, however, the precise question with which we are confronted in this case. This court, as well as the officers charged with the duty of stamping out venereal disease, is bound to consider the expediency of action taken by those officers, as well as questions involving the invasion of human rights with reference to the particular kind of an examination which is necessary to be made in order to detect the infection. If it were a disease such as smallpox or scarlet fever, where some outward manifestation is usually visible, or where, as in the case of diphtheria, its existence can be detected easily by clinical examination not involving any marked invasion of privacy, the question would be easier. However, an examination for the discovery of gonorrhea requires the taking of a smear from the private parts. Proper examination to ascertain whether or not a patient is afflicted with syphilis requires the securing of a sample of the patient's blood. The fact is, one who is under any likelihood of being infected with syphilis or gonorrhea should welcome an examination which would disclose that. It is well known that where one is afflicted the more quickly medical treatment is administered the more certain and satisfactory a result would be obtained.

The language of the city ordinance and the rules of the board of health, both of which have been upheld by us, are mandatory. There can be no question but that it is the duty of the city health officer to make this examination. It does not follow that the proper way to cause the patient to submit to the examination is that followed here, to hold the patient in confinement until they do submit. We hold that action was an invasion of the rights of the two petitioners in this case. Where there are reasonable grounds for the city health officer to believe that a patient is afflicted with a venereal disease he has the power under the ordinance to restrain the suspected person and to forcibly cause him or her to submit to an examination, bearing in mind always the provision of the ordinance that if a woman patient asks for a woman physician the ordinance requires one be furnished. We are not called upon here on the face of this record to state whether or not reasonable grounds did exist in these cases.

The motion of the respondents for judgment on the pleadings is denied and the writs will issue.

PARKER, J., concurs in the result.