**Roxanne REYNOLDS, Plaintiff-Appellant,**

**v.**

**William McNICHOLS, Mayor of the City and County of Denver, et al., Defendants-Appellees.**

**No. 73–1407.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 16, 1973.

Decided Dec. 13, 1973.

---

5. To the same effect see Garrett v. Pollock, Okl., 299 P.2d 516, 519, and Coker v. Hudspeth, Okl., 308 P.2d 291, 294.

John G. Bock, Englewood, Colo. (Peter H. Ney, Englewood, Colo., on the brief), for plaintiff-appellant.

Richard L. Dally, Denver, Colo. (Wesley H. Doan, Max P. Zall, Gerald Himelgrin, Marshall Fogel and J. Bayard Young, Denver, Colo., on the brief), for defendants-appellees.

Before LEWIS, Chief Judge, and JONES * and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a civil rights case brought by one Roxanne Reynolds under 42 U.S.C. §§ 1983 and 1985 against the City and County of Denver, its Mayor, the Honorable William McNichols, and certain of the city's officials and policemen. The gravamen of the complaint is that several of the constitutional rights of Roxanne Reynolds, hereinafter referred to as the plaintiff, were violated by the city

---

\* Honorable Warren L. Jones, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

and its officials in their enforcement of Denver's so-called "hold and treat" ordinance. This ordinance, among other things, purports to authorize under prescribed conditions the detention of one reasonably suspected of having a venereal disease, the examination of such person, and the treatment of such disease if it be determined that the person thus detained and examined does in fact have a venereal disease. The ordinance in question, Section 735 of the Revised Municipal Code of the City and County of Denver, is set out as Appendix I to this opinion.

It is the plaintiff's belief that the aforesaid ordinance is unconstitutional on its face, and, alternatively, that it has been unconstitutionally applied as to her. Upon trial to the court, the trial judge concluded that, contrary to the assertions of the plaintiff, the ordinance is constitutional on its face and that it has not been in anywise unconstitutionally applied as to her. Accordingly, the trial court entered judgment in favor of the city and its officials, and the plaintiff now appeals the judgment thus entered. We affirm.

Before examining the ordinance, we shall first summarize the evidence adduced upon trial of the matter to the end that the constitutional issues may be viewed in their factual context. The trial court heard testimony from the plaintiff, as well as from a policeman and from two medical doctors, one of whom was employed by the city as the head of its venereal disease clinic. Accordingly, there was considerable of an evidentiary nature before the trial court, all of which is significant in our consideration of the claim that the ordinance was unconstitutionally applied to the plaintiff.

The plaintiff, a twenty-seven year old female, who described herself as a model and prostitute, moved to Denver in the fall of 1970, and she first came to the attention of the Denver Police Department on November 29, 1970. On this latter date, she was arrested in a hotel room where she was in the company of a male person not her husband. At the trial of the instant civil rights case, the plaintiff testified that on this particular occasion she had agreed to have sexual relations with her male companion for a fee of $100, which fee had been paid. She denied, however, that at the time of her arrest she was in bed, and stated that on the contrary she was fully clothed and having a drink when the officers knocked at the door. So, whether this was a quid pro quo transaction is not disclosed by the record. In any event, the plaintiff was arrested and placed in the city jail and charged with violating city ordinances relating to solicitation and prostitution. In connection with these ordinance violations, the plaintiff was permitted a so-called "deferred prosecution," whereby she was not required to plead either guilty or not guilty, and the charges, after a passage of time, were dismissed. Although the record is not too clear, it appears that while in the city jail, plaintiff was given a blood test and an injection of penicillin and released on bond.

On May 21, 1971, and July 8, 1971, the plaintiff was issued a so-called "walk-in" order by the Denver police after complaints that plaintiff had been soliciting for acts of prostitution at a local Denver hotel bar. On neither of these occasions was the plaintiff placed in jail, but on the contrary she was simply ordered to report to the Department of Health and Hospitals for examination and possible treatment. On the first of these two occasions, the examination revealed that plaintiff had gonorrhea and drugs were administered therefor. On the second of these two occasions, the results of the examination were apparently negative to the end that no treatment was given.

On May 1, 1972, the plaintiff was given another "walk-in" order as she was alighting from her automobile preparatory to entering another Denver motel. On this occasion the plaintiff reported to the Department of Health and Hospitals with her attorney and refused to submit to any examination.

The plaintiff's final contact with the Denver Police Department occurred on June 19, 1972 when she was again arrested in a hotel room with a male person not her husband. On this occasion, according to the plaintiff, she and her male companion were "talking about an act of prostitution," but she added that any agreement had not been finalized. In any event, on this particular occasion plaintiff was again arrested and placed in the city jail, and charged with solicitation and prostitution. Thereafter, she was given the choice of being detained in the jail for forty-eight hours during which period of time she should be examined for venereal disease and treated therefor, if necessary, or simply taking penicillin, without an examination, in which event she would be immediately eligible for release. Plaintiff chose the latter alternative, and was orally given certain drugs, and released from custody. It is on this sequence of events that the plaintiff bases her civil rights action under 42 U.S.C. § 1983 and § 1985, claiming that the city and its officials acting pursuant to Ordinance 735 violated her rights under the Fourth and Fourteenth Amendments. By way of the relief prayed for, she sought monetary damages as well as injunctive relief. Let us now examine the ordinance in question as its various provisions relate to the facts of this case.

The legislative intent behind enactment of Ordinance 735 was to attempt to bring under control, and lessen, the incidence of venereal disease in Denver by determining and treating the source of such infection. The evidence before the trial court showed, incidentally, that the incidence of venereal disease had reached virtually epidemic proportions. To that end, the police were empowered under prescribed conditions to detain in jail certains persons "reasonably suspected" of being infected with a venereal disease, examine them for the presence of a venereal disease, and treat them for the same, if necessary. Such persons thus detained were ineligible for release on bond until the examining process was completed, which, according to the evidence, took forty-eight hours.

As an alternative to detention in jail for examination and treatment, the ordinance also provides that the police may "order in" certain other persons, "reasonably suspected" of having a venereal disease to the Department of Health and Hospitals for examination and treatment of venereal disease on either an in-patient or out-patient basis. As to whether one would be detained in jail for examination and treatment, or simply ordered to report to the Department of Health and Hospitals for examination and treatment, the ordinance further provided that the only persons who could be detained in jail for examination and treatment were those who were "reasonably suspected" of being infected with venereal disease by virtue of the fact that they had been arrested and charged with a violation of certain enumerated offenses, including, for example, the solicitation and prostitution ordinances of the City and County of Denver. A person who was "reasonably suspected" of having a venereal disease, but who nonetheless had not been thus arrested and charged, could only be served with a "walk-in" order to be examined and treated at the Department of Health and Hospitals. Although the ordinance has other provisions and is indeed quite comprehensive, the foregoing constitute what we deem to be the pertinent portions of Ordinance 735 relating to the plaintiff and her claims for relief.

As indicated, the plaintiff contends that the aforesaid ordinance is unconstitutional on its face, and, alternatively, that if it be constitutional on its face, then it has been unconstitutionally applied. In thus contending, plaintiff relies on the Fourth and Fourteenth Amendments. And her constitutional attack is aimed both at the provisions of Ordinance 735 which authorize the issuance of a walk-in order, as well as the provisions which purport to authorize under certain circumstances detention in jail for the purpose of examination and possible treatment.

Plaintiff's constitutional argument is summarized as follows: (1) The ordinance authorizes involuntary detention, without bond, involuntary examination and involuntary treatment, all in violation of her Fourth Amendment right to be secure in her person; (2) the ordinance does not spell out adequate guidelines as to the class of persons who can be compelled to submit to examination and treatment; (3) the current practice whereby a person, though initially detained in jail, is nonetheless eligible for immediate release if he or she submits to the injection of penicillin, even though there be no examination to indicate the presence of gonorrhea, results in an unconstitutional coercion of the person thus detained whereby one submits to an invasion of her right to be secure in her person in exchange for immediate release; (4) the injection of penicillin without first determining the presence of gonorrhea is contrary to accepted medical practice; and (5) the ordinance is applied only to females and not to males. In our view, none of these arguments stands up under scrutiny.

The principal thrust of the ordinance is aimed at bringing under control the *source* of communicable venereal disease. To that end, the city authorities are empowered to examine and treat those reasonably suspected of having an infectious venereal disease. It is not illogical or unreasonable, and on the contrary it is reasonable, to suspect that known prostitutes are a prime source of infectious venereal disease. Prostitution and venereal disease are no strangers.

In the instant case, the plaintiff freely admits, and the record amply supports her admission, that for some two and one-half years she was a prostitute operating in the Denver area and the fact that she was a prostitute was known to the local police. And in our view the fact that the plaintiff was a prostitute is of crucial significance. Finally, on at least one occasion, plaintiff was found to be infected with gonorrhea. Let us now examine the authorities.

Involuntary detention, for a limited period of time, of a person reasonably suspected of having a venereal disease for the purpose of permitting an examination of the person thus detained to determine the presence of a venereal disease and providing further for the treatment of such disease, if present, has been upheld by numerous state courts when challenged on a wide variety of constitutional grounds as a valid exercise of the police power designed to protect the public health. Cases involving state statutes or municipal ordinances similar to, though not necessarily the same as, the ordinance here in question, are: Welch v. Shepherd, 165 Kan. 394, 196 P.2d 235 (1948); Ex Parte Fowler, 85 Okl.Cr. 64, 184 P.2d 814 (1947); People v. Strautz, 386 Ill. 360, 54 N.E.2d 441 (1944); Varholy v. Sweat, 153 Fla. 571, 15 So.2d 267 (1943); City of Little Rock v. Smith, 204 Ark. 692, 163 S.W. 2d 705 (1942); and Ex Parte Arata, 52 Cal.App. 380, 198 P. 814 (1921).

The aforesaid proposition would also appear to be in accord with the rationale of such cases as Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905), and Compagnie Francaise v. State Board of Health, 186 U.S. 380, 22 S.Ct. 811, 46 L.Ed. 1209 (1902), the former being concerned with compulsory smallpox vaccinations and the latter with a statute quarantining persons suspected of having infectious disease and precluding others from entry into the quarantined area. These two cases were concerned with, among other things, the interaction between the police power and the Fourteenth Amendment. Nor in our view is the proposition set forth above foreclosed by Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). It is true that in *Camara* the Supreme Court struck down on Fourth Amendment grounds a municipal ordinance of San Francisco which authorized under certain conditions a warrantless inspection of an apartment building under the city's housing code. At the same time, however, the Court

stated that nothing in the opinion was intended to foreclose "prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations," and cited with approval both Jacobson v. Massachusetts, *supra,* and Compagnie Francaise v. Board of Health, *supra.*

■ Under the authorities above cited, we conclude, as did the trial court, that the provisions of Ordinance No. 735 authorizing limited detention in jail without bond for the purpose of examination and treatment for a venereal disease of one reasonably suspected of having a venereal disease by virtue of the fact that she has been arrested and charged with solicitation and prostitution is a valid exercise of the police power. It would seem to follow that the milder provisions of the ordinance providing for a walk-in order of one reasonably suspected of having a venereal disease for the purpose of involuntary examination and treatment are also valid under the police power, and we so hold.

■ We now turn to the plaintiff's contention that the ordinance has been unconstitutionally applied to her. As above indicated, the evidence was that as a matter of practice a person detained in jail under the provisions of Ordinance 735 was given a choice between staying in jail while the examination was being conducted, or submitting to an immediate injection of penicillin, without examination, in which latter event the person would be eligible for immediate release. According to the record, there was no particular risk involved in the taking of a penicillin shot, nor was there any injurious effect from the injection of one who did not in fact have gonorrhea. On this state of the record, we find no unconstitutional coercion of the plaintiff. The provisions of the ordinance permitting limited detention for involuntary examination and treatment of a venereal disease being in themselves constitutional, the fact that the city provides a less onerous alternative, which the plaintiff in this case elected to follow, does not violate any constitutional right of the plaintiff.

■ Similarly, the claim that the ordinance was enforced only against females, and not males, is, under the circumstances of this case, insufficient to invoke the equal protection provision of the Fourteenth Amendment. The trial court indicated that it was of the view that the equal protection argument was not properly within the issues raised by the pleadings in the case and accordingly did not consider it. In any event, in our view plaintiff's suggestion that she was unconstitutionally dealt with by the city authorities is under the circumstances unavailing.

■ In regard to her equal protection argument, the fact that on the two occasions when plaintiff was arrested in a hotel room the plaintiff's customer was not himself arrested and detained for examination is not significant. From the record before us, there is nothing to indicate that plaintiff did in fact have sex relations with either of her male companions, though evidence of solicitation was obvious. Such being the case, there was no reason to examine plaintiff's male companions.

Be that as it may, as above indicated, the ordinance is aimed at the primary source of venereal disease and the plaintiff, being the prostitute, was the potential source, not her would-be customer. Plaintiff's argument in this regard would perhaps carry more weight if she had shown that male prostitutes were dealt with differently than female prostitutes. There is nothing in the record to show that such is the case. In fact, there is nothing in the record to indicate that male prostitution is as yet the vogue in Denver.

Judgment affirmed.

### APPENDIX

#### I.

#### 735—VENEREAL DISEASES

.1. Protection of Public Health. In order to protect persons in the City and

County of Denver from the spread of communicable venereal disease the department of health and hospitals is empowered and authorized and the manager of health and hospitals is directed to use every available means to ascertain the existence of and to investigate immediately all suspected cases of communicable venereal disease and to determine the sources of such infections. Certain persons reasonably suspected to be infected with a communicable venereal disease may be detained in jail, examined, and if determined to be so infected, treated, in accordance with the provisions of this section. The manager of health and hospitals or his authorized representative shall order other persons reasonably suspected to be infected with a communicable venereal disease to be examined at the department of health and hospitals on an in-patient or out-patient basis, or, with the consent of the manager or his representative, by a person licensed to practice medicine, and to be treated medically for such disease, if necessary. (Sec. 1, Ord. 423, Series 1955)

.1-1. Categories of Suspected Persons. A person in any of the following categories may be reasonably suspected to have venereal disease: (Sec. 1, Ord. 423, Series 1955)

.1-1(1). Any person who is arrested and charged in the municipal court of the city and county or any other court in the city and county with an offense in the nature of or involving vagrancy, prostitution, rape, a violation of this article, or another offense related to sex and any person convicted of any such offense in the city and county. (Sec. 1, Ord. 423, Series 1955)

.1-1(2). Any person reasonably suspected to have had a contact with another individual reasonably believed to have had a communicable venereal disease at the time of such contact and any person who is reasonably believed to have transmitted any such disease to another individual. Any person who has had any such disease or who has been convicted of any offense of the kinds herein specified within twelve months next past, and who is reasonably believed to be engaged in any activity which might have occasioned exposure to a communicable venereal disease. (Sec. 1, Ord. 423, Series 1955)

.1-2. Detention in Jail. Suspected persons in the categories enumerated in Section 735.1-1(1) may be detained in jail. When any person so detained is determined not to have venereal disease in communicable form the manager shall release the individual from detention for health purposes. The detention of any person in jail under the provisions hereof shall continue only for such time as is reasonably necessary to examine such person and render treatment if such person is found to have a venereal disease in a communicable form. The provisions hereof shall not be utilized as, nor construed to be, a penalty or punishment. No person detained for health under the provisions hereof shall be released from such detention even if he or she is otherwise eligible for release on bond or by reason of payment of fine, or termination of sentence imposed. (Sec. 1, Ord. 423, Series 1955)

.1-3. Examination in Jail. Every suspected person detained in jail under the provisions of Section 735.1-2 shall be examined by the department of health and hospitals for the purpose of determining whether or not such person is, in fact, infected with a communicable venereal disease. Every such person shall submit to such examinations as are necessary and permit specimens to be taken for laboratory analyses. The detention of each suspected person shall continue until the results of such examinations are known and the person found to be free from any such disease, or, if infected, until the disease is no longer communicable. (Sec. 1, Ord. 423, Series 1955)

.1-4. Treatment in Jail. The department of health and hospitals shall treat every person suspected to have venereal disease who has been detained and examined in jail and found to have any such disease. The treatment shall con-

tinue until the disease is no longer communicable. (Sec. 1, Ord. 423, Series 1955)

.1–5. Examination and Treatment at Department or by Private Physician. Every suspected person in the categories enumerated in Section 735.1–1(2), and in the categories enumerated in Section 735.1–1(1) who is not detained in jail shall be examined at the department of health and hospitals on an in-patient or out-patient basis as determined in individual instances by the manager of health and hospitals or his authorized representative. Each such person shall submit to examinations as necessary and permit specimens to be taken for laboratory analyses and shall comply with the directions of the manager or his authorized representative with relation to hospitalization on an in-patient basis or attendance at clinic on an out-patient basis, as the case may be. Each such person shall continue to follow these directions until the results of his or her examination are known and the person determined to be free from any such disease, or, if infected, until the disease is no longer communicable. With the consent of the manager or his authorized representative a suspected person may be at his or her expense examined by a doctor licensed to practice medicine and treated medically for such disease, if necessary. In these latter instances, the manager or his authorized representative shall receive reports of examinations and treatment and other information relative to the problems involved from the medical doctor selected. (Sec. 1, Ord. 423, Series 1955)

.1–6. Violations. It shall be unlawful to refuse to submit to examination or treatment provisions hereof or to violate any order of detention. It shall be unlawful to refuse to obey any order of the manager of health and hospitals or his authorized representative requiring examinations and treatment, if necessary, for such disease, or any other order issued hereunder. (Sec. 1, Ord. 423, Series 1955)

.2. Duties of Manager of Safety and Excise and Police Officers. The manager of safety and excise and the officers of the police department of the city and county are hereby authorized, empowered, and directed to implement the purposes of Section 735.1 in accordance with the provisions of this section. (Sec. 2, Ord. 423, Series 1955)

.2–1. Manager of Safety and Excise. The manager of safety and excise shall cause to be furnished to the department of health and hospitals information pertinent to the enforcement of Section 735.1 with relation to persons who are arrested and charged or otherwise imprisoned in any jail administered by the department of safety and excise. The manager of safety and excise is directed to make available in such jails an area, room, or place which may be used as a detention for health facility and for examinations. The manager of safety and excise, officers of the police department, and employees of the department of safety and excise shall co-operate in the execution of such detention procedures as may be necessary, and shall assume custodial supervision of persons detained under the provisions of Section 735.1–2 and shall supply such personal restraints as may be necessary to effectuate the purposes thereof. (Sec. 2, Ord. 423, Series 1955)

.2–2. Police Department. Officers of the police department of the city and county shall furnish to the department of health and hospitals information pertinent to the enforcement of the provisions of Section 735.1. Police officers shall have authority to detain suspected persons in the categories enumerated in Section 735.1–1(1) for health purposes in jail in accordance with the procedure set forth in Section 735.1–2 for examination and treatment by the department of health and hospitals under the provisions of Sections 735.1–3 and .1–4. Police officers shall have authority to order suspected persons in the categories enumerated in Section 735.1–1(2) and in the categories enumerated in Section 735.1–1(1) who are not detained in jail

to report to the department of health and hospitals for examination and treatment at the direction of the manager of health and hospitals or his authorized representative in accordance with the provisions of Section 735.1–5. They shall also have authority to order persons to report to the department of health and hospitals for examination and treatment, as aforesaid, who have been held for investigation of offenses of the types enumerated in Section 735.1–1(1) and who have been released without charges having been filed and similarly persons who have been acquitted of any such charges and other suspected persons who have been released on bond. (Sec. 2, Ord. 423, Series 1955)

.2–3. Violations. It shall be unlawful to refuse to submit to examination or treatment under an order as hereinabove provided or to violate any order of detention or to refuse to obey any order requiring submittal to examination and treatment at the department of health and hospitals. (Sec. 2, Ord. 423, Series 1955)

LEWIS, Chief Judge (concurring):

I concur but consider it appropriate to emphasize or reemphasize the limited posture of the case within which the issues are both presented to the court and determined by our decision.

This is not a medical practice case. As a consequence we do not consider and certainly do not determine that the giving of a curative drug for a venereal disease not diagnosed as existent is acceptable medical practice. Nor do we, in holding that the subject ordinance is neither unconstitutional on its face nor unconstitutionally applied to appellant, hold that the ordinance is constitutional *in toto*. A statute is not unconstitutional on its face if objectionable features are clearly severable or if its contained language can be reasonably interpreted to project a constitutionally accepted standard.

In the case at bar we are concerned only with the self-imposed plight of a prostitute and the admitted occupational hazard of venereal disease to her and through her to the community. We do not hold that a vagrant is similarly situated nor are we required, at this time, to spell out the limitations, if any, that the word "suspicion" may have as a legal standard. Sufficient cause existed in this case for the authorities to consider appellant to be a probable health hazard to the community.