Ex parte MAXINE JUNE FOWLER.

No. A-10877.    Sept. 17, 1947.

(184 P. 2d 814.)

Earl E. James, of Oklahoma City, for petititoner.

A. L. Jeffrey, Municipal Counselor, and P. J. Demopolos and Raymond Gramlich, Asst. Municipal Counselors, all of Oklahoma City, for respondent.

JONES, J. This is an original action in habeas corpus brought by the petitioner, Maxine June Fowler, to secure her release from confinement in the city jail of Oklahoma City.

In her verified petition, it is alleged that the petitioner is being confined in that part of the city jail known as "The Clinic", but that said detention of the petitioner is illegal and unauthorized.

At the hearing before this court, the proof showed that the petitioner was a prostitute who had practiced her profession in Oklahoma City for several years. That she had previously been arrested and convicted of practicing prostitution, and that on one of these occasions when examined, she was found to be infected with a venereal disease.

The proof showed that the petitioner was arrested on Sunday evening, May 11, 1947, in an apartment house on Fifth street. When she was placed in the city jail, the arresting officer had the clerk enter on his book "vagrancy by prostitution, investigation, and hold for clinic." About 2:00 o'clock p. m. on May 12, 1947, the petitioner was taken before a police judge where she entered a plea of guilty to the charge of vagrancy, and was fined a total of $20, which petitioner paid. The judge then directed that she be taken to the venereal clinic for examination.

The venereal clinic is a quarantine ward on the fourth floor of the city jail, where persons arrested for prostitution, or any sex crimes, may be taken on order of the police judge for examination to determine whether they are infected with a venereal disease, and if so, detain them for treatment. The proof showed that immediately upon the petitioner being taken to the venereal clinic, a

slide was taken to determine whether she had an active case of gonorrhea. At the same time, a culture was taken and sent to the State Laboratory for examination. The proof showed that the test taken through the means of the microscopic slide would disclose whether the patient was infected within just a few hours, but that it took 48 hours to get the results of the culture test. The proof showed that the test taken by the slide was negative, but at the time of the hearing the laboratory had not completed its test on the culture which was taken from the petitioner.

The law under which the respondent justifies his restraint of the petitioner provides:

"The keeper, manager, guard, or person in control of every prison or penal institution in this State, shall cause to be examined every person confined in such prison or penal institution after conviction for any offense, to determine whether such person is an infected person. State and local Health Officers, or their authorized deputies who are physicians, are empowered to examine those who are arrested by lawful warrant for vagrancy, prostitution, rape or other sex crimes for the purpose of determining if they are infected with venereal disease. Every such person shall submit to such examination and permit specimens to be taken for laboratory examinations. Such person may be detained until the results of such examination are known. The required examination shall be made by the Health Officer, or, at the option of the person to be examined, by an approved licensed physician. All persons found to be infected with a venereal disease shall be treated by the local Health Officer or a licensed physician of their own choice until said person is noninfectious or dismissed by said physician. In the event such person infected with a venereal disease refuses or fails to submit to treatment, then said person may be quarantined for the purpose of treatment and reported to the State Board of Health."

Tit. 63 O. S. 1941 § 548, as amended Laws 1943, p. 149, § 1.

It is contended by petitioner that the foregoing statute is unconstitutional for the reason that it amounts to forcing a person to give testimony against one's self, and further that it constitutes an illegal delegation of legislative authority, and secondly that the rules and procedure and acts on the part of the Police Department in the manner of their arrest and detention of the prisoner was illegal and unconstitutional throughout.

This court has had occasion to examine the 1919 venereal disease act, now appearing on the statutes as 63 O. S. 1941 § 548.

In the case of Ex parte Roman, 19 Okla. Cr. 235, 199 P. 580, an action had been instituted in habeas corpus to determine the legality of the detention of the petitioner, Roman, by the superintendent of the State Industrial School for Girls. It was admitted that the petitioner was committed to the school when she was of the age of 13 years and had remained there until she attained her majority. The respondent, superintendent, alleged in her response that the petitioner had not been discharged for the reason that it was determined that petitioner had an infectious venereal disease, and under the statute (63 O. S. 1941 § 548, supra) it was her duty to detain the petitioner for purpose of treatment of such venereal disease.

In disposing of that case this court stated:

"The power of the Legislature to prevent the introduction and spread of infectious and contagious diseases cannot be questioned, and the power to make quarantine regulations is one of the most important conferred upon the health authorities, and such regulations constitute a proper exercise of police power. 12 R. C. L. 1285, 1290.

However, if after such arrest or detention, such person challenges the right of the authorities to continue the detention, the fundamental law affords such person the right to have the legality of his or her detention inquired into by a court of competent jurisdiction in a habeas corpus proceeding. The law denies to no one restrained of his liberty without a hearing the right to prove in some tribunal that the facts justifying his restraint do not exist. 6 R. C. L. p. 435."

"If those facts do not exist, the officer has no jurisdiction to continue the restraint, and the court in a habeas corpus proceeding has authority to inquire whether the facts essential to jurisdiction exist. Ex parte Hardcastle, 84 Tex. Cr. R. 463, 208 S. W. 531, 2 A. L. R. 1539."

The amendment of 1943, hereinabove quoted, authorizes local health officers to examine those who are arrested for "vagrancy, prostitution, rape or other sex crimes for the purpose of determining if they are infected with venereal disease. Every such person shall submit to such examination and permit specimens to be taken for laboratory examinations. Such person may be detained until the results of such examination are known."

This amendment enlarges the scope of the inquiry which may be made to determine whether a venereal disease exists and to help curb the spread of such infection.

It is contended that a police officier may not arbitrarily arrest a person upon suspicion that she has a communicable venereal disease, but that that fact must first be judicially determined before the alleged infected person may be restrained of her liberty, or detained for examination and treatment. The record discloses that the only person in Oklahoma City who commits a suspected infected person to the clinic for examination is the police judge, and he only does so where the proof before him

shows that the suspected person is one of the class named in the statute. Here the petitioner was a known prostitute. In her testimony at the hearing before this court, she stated she had been a prostitute for three or four years and had at one time been infected with a venereal disease. She had a police record as a prostitute. Certainly, if the statute is constitutional, there were sufficient grounds for the police judge to feel that the petitioner should be detained at the clinic until her venereal tests were completed. Counsel for the petitioner contended that the policemen are making it so tough for petitioner through numerous arrests, and holding her for examination at the clinic, that it results in the petitioner spending a large part of her time in illegal restraint. The petitioner pleaded guilty to vagrancy by prostitution committed on the night of May 11th. If she continues to follow the illegal profession of prostitution, one of the hazards that she must contemplate is that the police might arrest and prosecute her for such conduct and as a necessary corollary to such arrest detain her in the quarantine ward for examination in order to protect that part of the public who might seek the services of the petitioner in her profession from becoming infected with a communicable venereal disease.

In the case of Ex parte Caselli, 62 Mont. 201, 204 P. 364, the Supreme Court of Montana had under consideration similar questions to those which are raised on behalf of petitioner. It was there stated:

"There is, perhaps, no authority to be found at this late day which denies that the Legislature, under its police power, may enact laws authorizing the establishment of quarantine regulations and requiring the detention of persons affected with contagious diseases dangerous to the public health without resort to a preliminary judicial proceeding to determine the character of the dis-

ease and the facts constituting the danger to public health. Under the statute before us the proper health officer may issue his warrant directing the arrest, without notice, of any person reasonably suspected of having a communicable disease, and his detention for the time being and until the existence and character of the disease can be determined; and, in case his course of conduct or condition is such, in the judgment of the health officer, as to render it necessary to protect the public health, to isolate such person until he recovers from the disease or until he may be released without further danger to the public. If, however, after his arrest, such person challenges the right of the authorities to continue his detention, he is entitled to have its legality inquired into upon habeas corpus. The existence of the power of the health officer to detain any one rests upon the existence of the facts making such detention necessary. The law does not deprive any citizens of the right to be heard on this question, but he is not entitled to a hearing in the first instance."

" 'The detention of persons affected with or suspected of contagious disease in quarantine presents one of the cases where the police power is literally the law of self-defense—a paramount necessity.' Freund's Police Power, § 446.

"If the contention of counsel for the complainant should be upheld, this law of self-defense—necessity—would be rendered entirely inoperative while the judicial proceeding would be in progress. In my opinion, the Fourteenth Amendment to the Constitution of the United States and sections 6 and 7 of article 3 of the Constitution of the state of Montana, relied on by complainant's counsel, have no application to this class of cases. I cannot conclude that the makers of the two Constitutions ever contemplated a situation where a state would be rendered powerless to protect itself by prompt and speedy action from the spread of a contagion which by neglect might reach to and affect any considerable number of people in a community."

In the case of Ex parte Arata, 52 Cal. App. 380, 198 P. 814, 816, the respondent sought to justify the detention of the petitioner for examination to determine whether she was infected with a venereal disease and alleged that she had been arrested in a room where she had offered to commit sexual intercourse with an officer for a price. The reasoning of the California court in disposing of some of the contentions of petitioner is so sound that we take the liberty of quoting from a considerable portion of that opinion:

"Referring briefly first to the duty of the chief of police and officers working under his direction, it is enough to say that the plain and unmistakable terms of the law require such officers, upon making the arrest of a person on a criminal charge, to take such person before a magistrate without delay, where the accused may be arraigned upon a sworn complaint and secure a judicial hearing. The magistrate, in the case of petitioner, acted strictly as his duty required of him in fixing bail and giving the order for release of petitioner pending trial, and, as we shall proceed to show, the right of the chief of police to further detain the petitioner must be justified on grounds having no reference at all to the fact that an accusation had been made in the police court charging petitioner with a crime.

"That the health authorities possess the power to place under quarantine restrictions persons whom they have reasonable cause to believe are afflicted with infectious or contagious diseases coming within the definition set forth in Political Code, § 2979a, as a general right, may not be questioned. It is equally true that in the exercise of this unusual power, which infringes upon the right of liberty of the individual, personal restraint can only be imposed where, under the facts as brought within the knowledge of the health authorities, reasonable ground exists to support the belief that the person is afflicted as

claimed, and as to whether such order is justified will depend upon the facts of each individual case.

"Where a person so restrained of his or her liberty questions the power of the health authorities to impose such restraint, the burden is immediately upon the latter to justify by showing facts in support of the order. It might be proved, for instance, that the suspected person had been exposed to contagious or infectious influences; that some person had contracted such disease from him or her, as the case might be. Such proof would furnish tangible ground for the belief that the person was afflicted as claimed. And we wish here to emphasize the proposition, which is unanswerable in law, that a mere suspicion, unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all for depriving persons of their liberty and subjecting them to virtual imprisonment under a purported order of quarantine.

"Coming then to a case where it is claimed that the person suspected is one whose habits are such as to warrant the belief that they are afflicted with a venereal disease: We may agree that in cases of persons who commit acts of prostitution—that is, acts that are commonly understood to fall within the 'commercial vice' definition—such a majority of them may be afflicted with infectious venereal disease as to justify the health department in enforcing the preliminary quarantine measures as here shown against any such; in other words, that, based upon the experience of the health authorities as it is stated to be in the return, it is reasonably probable that a person found to be of the class mentioned is so infected with such disease. The presumption which this statement allows to be made as against the individual in the first instance has its foundation in the fact that women of ill fame, by the very nature of their occupation, indulge in repeated and promiscuous acts of sexual intercourse."

The adoption of laws for the protection of public health is universally considered to be a valid exercise of the police power of the state as to which the Legislature

is necessarily vested with large discretion, not only in determining what are contagious and infectious diseases, but also in adopting means for preventing the spread thereof. We all know as a matter of common knowledge through the widely advertised use of the State Health Clinic that both the Federal and State Government and municipalities in Oklahoma are vigorously engaged in an effort to stamp out venereal diseases. The State Legislature has not made an illegal delegation of authority to municipal health boards. The act in question specifically names the conditions under which a suspected person may be detained for examination. If the suspected person denies that she or he is an infected person, they may assert their rights to release in a habeas corpus action, and the burden of proof will be upon those asserting that he or she is infected, to show that she has a contagious disease, or that the statutory grounds do exist which justify her detention until a test is made to determine whether she is so afflicted. In granting this authority to make such test to determine whether a person lawfully arrested for certain crimes is infected with venereal disease, it was not intended that officers charged with the responsibility of enforcing the law could act arbitrarily and detain the suspected person for an unreasonable length of time before giving the test. If a person is lawfully arrested for one of the crimes mentioned in the statute and the officers mentioned are of the opinion that an examination be given to determine whether they are infected with a venereal disease, the suspected person is entitled as a matter of right to have the test given as speedily as is possible so that her quarantine will not be longer than is absolutely necessary to determine whether there is an infectious disease.

The local health officers and policemen should consult their counsel so that they will thoroughly know the limitations attached to the powers which have been given them under the statutes. One of the most important rights guaranteed under our Constitution is that where liberty of the citizen is involved. This cannot be lightly passed over. We will not allow an encroachment upon that right, except in an emergency occasioned by danger to the public health and then only in strict compliance with the statutes.

It is our conclusion that the statute in question does not make an illegal delegation of legislative authority. It is unnecessary for us to determine whether the police department held the petitioner an unnecessary length of time for the reason that shortly after the hearing was completed and before the opinion of this court was announced, the laboratory test was completed showing the petitioner was not an infected person and she was released. If the petitioner is right in her contention that the policemen acted maliciously and detained her an unnecessary length of time under the pretense of giving her venereal tests, her recourse is in the civil courts. In view of the fact that petitioner was released in less than 24 hours after the hearing before us, it is not necessary for us to pass upon this question.

We wish, however, to emphasize that officers who are sworn to enforce the law, in following the statute which has been given them for the purpose of combating the spread of venereal disease should not use such authority as a cloak to give unwarranted and additional punishment to persons on the ground that they suspected that they are infected with a venereal disease.

For the reasons hereinabove stated, the petition for writ of habeas corpus is denied.

BAREFOOT, P. J., and BRETT, J., concur.