# Ex parte WOODRUFF.

No. A-11259. Sept. 28, 1949.

(210 P. 2d 191.)

Sam W. Moore and Forest N. Simon, Oklahoma City, for petitioner.

A. L. Jeffrey, Municipal Counselor, Kenneth J. Wilson, William F. Collins, Jr., and P. J. Demopolos, Asst. Municipal Counselors, Oklahoma City, for respondent.

POWELL, J.   Under date of June 14, 1949, petitioner, Mae Woodruff, filed her petition in this court, to secure her release from confinement in the city jail of Oklahoma City.   The parties have stipulated as follows:

"That on the 8th day of June, 1949, at the approximate hour of 10:30 o'clock P.M., petitioner was arrested by the Oklahoma City Police without warrant at a tap room in the 2200 block, West Exchange Avenue, Oklahoma City, Okla.; petitioner was held in jail until 2 o'clock P.M. on the 10th day of June, 1949, at which approximate time petitioner was convicted in the Municipal Court of the City of Oklahoma City, Oklahoma, of vagrancy by being a prostitute, fined $14.00 and costs, and ordered by the Municipal Judge of the said City to be held for examination in the Oklahoma City venereal disease clinic; that on the morning of June the 11, 1949, petitioner refused to submit to an examination by C. B. Taylor, M.D., director of the Oklahoma City venereal

disease clinic; that at 11:30 o'clock A.M. on the 11th day of June, 1949, a hearing was had before the Honorable W. A. Carlisle, Judge of the District Court of Oklahoma County, upon a writ of habeas corpus wherein petitioner prayed that the District Court of Oklahoma County order the Respondent herein to afford to the petitioner the right to be examined by her own physician and further that the Respondent herein be ordered to release the said petitioner upon receipt of the results of such examination; that the said District Judge continued the hearing of the writ of habeas corpus to 1:30 o'clock P.M., June 13, 1949, and refused at that time, to order the respondent L. J. Hilbert to allow petitioner to be examined by her own physician and/or to be bound by the results of such examination of the petitioner by her own physician; that petitioner on the morning of June 13, 1949, did submit to an examination by C. B. Taylor, M. D., for the purpose of determining the existence of both gonorrhea and syphilis; that the result of such examination showed negative as to gonorrhea and negative as to syphilis; that at the hearing on June 13, 1949, before the said District Judge, Judge Carlisle refused to grant petitioner her release for the reason that respondent proclaimed the necessity of an additional examination, to be made before the morning of June 15, 1949, to determine the existence of gonorrhea, that petitioner lodged her petition for a writ of habeas corpus in this court on the 14th day of June, 1949, and that the same was set for hearing and argued, orally, at 10 o'clock a. m., June 15, 1949."

Respondent justifies petitioner's restraint under provisions of Sections 548 and 552.2 of Title 63 O. S. Supp. 1947, reading:

"548. Prisons and penal institutions—Arrested persons—Examination and treatment—Quarantine.—The keeper, manager, guard, or person in control of every prison or penal institution in this State, shall cause to be examined every person confined in such prison or penal institution after conviction for any offense, to determine

whether such person is an infected person. State and local Health Officers, or their authorized deputies who are physicians, are empowered to examine those who are arrested by lawful warrant for vagrancy, prostitution, rape or other sex crimes for the purpose of determining if they are infected with venereal disease. Every such person shall submit to such examination and permit specimens to be taken for laboratory examinations. Such person may be detained until the results of such examination are known. The required examination shall be made by the Health Officer, or, at the option of the person to be examined, by an approved licensed physician. All persons found to be infected with a venereal disease shall be treated by the local Health Officer or a licensed physician of their own choice until said person is non-infectious or dismissed by said physician. In the event such person infected with a venereal disease refuses or fails to submit to treatment, then said person may be quarantined for the purpose of treatment and reported to the State Board of Health." As amended Laws 1943, p. 149 § 1.

"§ 552.2 Rules and regulations.—The State Commissioner of Health shall have power to make and amend any and all rules and regulations for the prevention and cure; to prevent the spread of the venereal diseases, which he deems necessary for carrying out of this and all other legislation for the control of venereal diseases, and such rules and regulations shall have the force and effect of law." Laws 1945, p. 243, § 2.

In attempting to achieve the results intended by the Legislature, the State Commissioner of Health promulgated certain rules, and herein petitioner questions Rule No. 10, A, (b) Female, 2, which is:

"Two successive negative examinations for gonococci of the secretions of the urethra, vagina and of the cervix with an interval of at least forty-eight hours, and repeated for four successive weeks, unless shorter in the opinion of the health officer should be sufficient. These smears should be taken from the secretions expressed from

the urethra or from the cervix after all secretions have been mopped away from the external os."

The introductory statement to the rule is:

"Standards which shall govern in determining the infectivity of and the period of control and treatment of persons suspected of being infected, or having been found to be infected with a venereal disease."

Petitioner in support of her petition advances four propositions, the first being:

"That the delegation of authority by the Statutes of the State of Oklahoma, herein involved, Sections 548 and 552.2 of Title 63 O.S. Supp. 1947, constitutes an unconstitutional delegation of legislative authority."

In Ex parte Fowler, 85 Okla. Cr. 64, 184 P. 2d 814, a case where the treatment is very comprehensive, this court has held the act in question constitutional, and held contrary to petitioner's contentions. And see, also, Ex parte Roman, 19 Okla. Cr. 235, 199 P. 580.

But in petitioner's argument she contends that in Ex parte Fowler, supra, consideration was not given to the manner in which the statute attempts to delegate police power; that is, "that the authority is delegated without sufficient standards, guides and boundaries within and by which the selected instrumentalities must act." Also, that the effect of the statute in question is that the Legislature has abdicated its constitutionally delegated function contrary to the provisions of art. V, sec. 1 of the Constitution of the State of Oklahoma.

Petitioner, without analysis thereof, tabulates a great number of cases said to support the proposition raised, and while several are authority for general principles of law that seem to support the proposition raised by petitioner, yet on analysis, we do not find such citations to

support petitioner's argument as applied to the stipulation of facts in the within case.

The two principal cases mentioned by petitioner are: A. L. A. Schechter Poultry Corporation et al. v. United States, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947; and Panama Refining Company v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 44.

We find these two case, as the other cases cited by petitioner, to support what has long been the rule in this jurisdiction; that is, that the law making prerogative is a sovereign power conferred by the people upon the legislative branch of the government, in the state or the nation, and that such authority cannot be delegated to other officers, boards or commissions, or branches of government. Therefore, neither the Congress of the United States nor the Legislature of Oklahoma, can delegate its legislative power, but may confer administrative power on an executive, a board, or commission. For cases from this jurisdiction so holding, see: Shilkett v. State, 29 Okla. Cr. 17, 232 P. 127, where it is stated:

"Within reasonable bounds, the Legislature may confer regulative powers upon the state board of health, and give to that board authority to adopt rules and regulations having the force and effect of law."

See, also, Rush v. Brown, 187 Okla. 97, 101 P. 2d 262; Bailey v. State Board of Public Affairs et al., 194 Okla. 495, 153 P. 2d 235; and Gibbons v. Missouri K. & T. R. Co. et al., 142 Okla. 146, 285 P. 1040.

A case that stands out to us as a leading case, after examination of many cases from other jurisdictions, and where is treated the specific question of the claim of delegation of administrative authority without sufficient standards, guides and boundaries, is that of Matz v. J.

L. Curtis Cartage Co., 1937, 132 Ohio St. 271, 7 N. E. 2d 220, and in which case the court cites the two Federal cases heretofore mentioned. The rule adopted in the Matz case has since been approved by a number of Ohio cases, in the Tennessee case of Houck et al. v. Minton et al., Tenn. Sup. 1948, 212 S. W. 891, and particularly in a late Ohio case involving the public health, and being Weber v. Board of Health, Butler County, et al., 1947, 148 Ohio St. 389, 74 N. E. 2d 331, wherein it is stated:

"Generally, a law conferring discretion on executive officer or board, without establishing any standards for guidance thereof, is 'delegation of legislative power' and unconstitutional, but when discretion relates to police regulation for protection of public morals, health, safety or general welfare and it is impossible or impracticable to provide such standards without defeating legislative object, legislation conferring such discretion may be constitutional without such restrictions."

See, also, so holding: State ex rel. Sofeico v. Heffernan, 41 N. M. 219, 67 P. 2d 240; State v. Hutchinson, 246 Ala. 48, 18 So. 2d 723; Chafin v. American Soc. Prevention of Cruelty to Animals, 184 Misc. 15, 53 N. Y. S. 2d 174; State of Florida v. Atlantic Coast Line Ry. Co., 56 Fla. 617, 47 So. 969, 32 L.R.A., N.S., 639, and State v. Bunner et al., 126 W. Va. 280, 27 S. E. 2d 823.

We find secs. 548 and 552.2 of Title 63 of O. S. Supp. 1947 not violative of art. V, Sec. 1 of the Constitution of the State of Oklahoma.

Under her second proposition, petitioner argues that her conviction in the municipal court of Oklahoma City is not such conviction as falls within the purview of sec. 548, Title 63 O. S. Supp. 1947, supra, pointing out that when the statute was in part amended in 1943, there

was omitted the clause "against the laws of the State or any municipality thereof"; that it was necessary that she be arrested under warrant in order to be detained for examination for venereal disease, the warrant to be from a court having jurisdiction to incarcerate the person convicted. That is, "that before the keeper of a prison or penal institution 'shall cause to be examined * * *' there must be a conviction of an offense which by the judgment and sentence lawfully lodges the corpus of the individual in such institution." She contends that she could have been prosecuted in a state court under sec. 667, Title 11 O. S. 1941, and that such was necessary in order for her to be held for examination.

A reading of the sections mentioned discloses that authority is granted to state and local health officers to make examination of persons merely arrested by lawful warrant for sex offenses. But here the petitioner was not ordered examined until after she had pleaded guilty to the sex offense "vagrancy by prostitution", and had paid a fine. In the present case, the petitioner apparently did something in connection with her trade in the presence of the officer, causing her arrest, so that it was not necessary that a warrant be issued, as could have been. 11 O.S.A. § 714. And while the municipal court does not possess the authority of state courts it does have authority to incarcerate a person after conviction for nonpayment of fine. It is, therefore, the opinion of this court that the municipal judge of said court could, after the conviction of the petitioner for the sex offense charged. acting in the capacity of a local health officer, detain petitioner for examination for venereal disease. Such we interpret to be the spirit and intent of the statute in question, and in accordance with the rules and regulations adopted by the State Board of Health judged to achieve

the result sought by the Legislature in the enactment of the statute in question. See Ex parte Fowler, supra.

Petitioner next contends that in connection with sec. 548 of Title 63 O. S. Supp. 1947 "that an approved physician is any licensed and practicing physician within the state of Oklahoma who has been licensed under the provisions of Sec. 481 through 514, Title 59 O. S. 1941."

In the instant case petitioner finally agreed for the director of the Oklahoma City Venereal Disease Clinic to examine her, but we would settle this question. Before a physician can procure a license to practice medicine in Oklahoma, he must comply with the provisions of sec. 481 through 514, Title 59 O. S. 1941 in order to obtain his license, but the statute complained of by petitioner requires the physician who might be chosen by the venereal disease suspect to be an "approved licensed physician", the term implying something more than just a license to practice. And for good reason, considering that not all physicians may be in sympathy or familiar with the rules of the State Board of Health or the Directors of venereal disease clinics in the state under such rules. It is common knowledge that recognized hospitals throughout the land allow only approved staff physicians to perform particular operations, or prescribe for disease. There are reasons too numerous to mention that impel such policy, all calculated for the benefit of the victims of disease. What a reasonable rule this is when it comes to communicable diseases, that may undermine a nation, for reasonableness is a relative term depending on the urgency and gravity of the occasion.

We are of the opinion that persons suspected of having a venereal disease or diseases, and in custody under provisions of sections 548 and 552.2 of Title 63 O. S. Supp.

1947, are not entitled to be examined by any physician they might choose, but only by a licensed physician on the approved list of the State or the local Health Officer.

The fourth and final proposition advanced by petioner is "that where the Statutes in controversy, Sec. 548, Title 63 O. S. Supp. 1947, states that 'An examination' shall be made, it means one and only one examination."

The State Board of Health in attempting to carry out the legislative program, promulgated certain rules, one being No. 10, A., (B) Female, 2, supra, requiring that specimens from the female organs be taken 48 hours apart, in order to determine infectivity.

We have herein and in Ex parte Fowler, supra, determined that the State Commissioner of Health is authorized to promulgate rules to carry out the purposes of the sections of the statute complained of. And while in the narrower sense, an examination is necessarily made of the person each time a specimen is obtained, in a broader sense and overall, it with reason may be said that the term "an examination" as used in the statute presupposes and means such an examination or series of tests as, in the sound judgment of the State Commissioner of Health and his expert advisers, will obtain the results sought by the legislative act in question. See Vol. 32, Words and Phrases, Perm. Ed., page 496, and Gould's Medical Dict., 3rd Ed. pp. 495 and 1102.

What might be the rule today, might not be the rule later on, as medicine is a progressive science, and it can be contemplated that the rules may be revised from time to time in keeping with the advancement of medical science.

It is reasonable to indulge the presumption that these rules and regulations were adopted to accomplish in a fair and reasonable way the objects of the legislative act, and this presumption continues until the contrary appears by competent and convincing evidence. The rules and regulations of the State Board of Health are subject to judicial review, in a proper case, where it is alleged that some are unreasonable, arbitrary, or in any other way flagrantly infringe upon the constitutional rights of the individual. Ex parte Fowler, supra.

The rule complained of has been examined and found reasonable for the purpose of determining the infectivity of persons suspected of having a venereal disease or diseases, and for the prevention of the spread thereof, which is in accordance with the legislative intent, and for the public welfare. We therefore approve the rule in question.

For the reasons hereinabove stated, the petition for writ of habeas corpus is denied.

JONES, P. J., and BRETT, J., concur.