## HILL v. HILBERT.

No. A-11444.   Sept. 6, 1950.

(222 P. 2d 166.)

Sid White, Oklahoma City, for petitioner.

Howard V. Cudd, Asst. Municipal Counselor, Oklahoma City, for respondent.

JONES, P. J.  This is an original action instituted by the petitioner Benton Hill to secure his release from confinement in the city jail of Oklahoma City, where he was allegedly restrained as a prisoner in what was designated as the venereal health clinic section of the city jail.  When the petition was filed a rule to show cause was issued and the city attorney filed a response in which he stated that petitioner together with one Jewel Caves had entered a plea of guilty in the municipal court to the charge of occupying a room for immoral purposes and had been given a fine of $16; that after the plea of guilty was entered and the fine paid the police judge ordered the petitioner detained in the venereal clinic section of the city jail under quarantine awaiting tests to be

given by health officers to determine whether he was infected with a communicable venereal disease.

At the hearing before this court Benton Hill and Jewel Caves each testified. Their evidence was substantially as follows: Benton Hill was 28 years of age and a roofing contractor. He had separated from his wife and was living in a room which he rented at the Columbia Hotel. Hill and his wife owned a lunch stand and taproom in partnership with Jewel Caves, and Jewel Caves was the operator of said place of business. Hill and Mrs. Caves had been keeping company for several months. On the night in question they had gone to a night club and had danced nearly all night; that about 4 or 4:30 a. m. they went by petitioner's room so that petitioner could shave and change shirts before eating his breakfast and going to work; that they were there in the room when officers knocked on the door about 5 a. m. Both were fully clothed with the exception that petitioner Hill did not have on a shirt.

Jewel Caves testified that she was not a prostitute, had never been arrested before in her life, and that the reason she and Hill entered pleas of guilty to the charge of occupying a room for immoral purposes was because they wanted to avoid any publicity and get the matter over as quickly as possible; that after being informed by their attorney that the police judge thought that he could order them held to await examination by the health clinic, which would detain them from two to four days in the venereal clinic, they had given notice of appeal from their conviction and intended to prosecute their appeal to the district court. She testified that she did not have any venereal disease. On cross-examination she admitted that she had spent the night with Hill on one

or two occasions there in his room. She said she was divorced.

The proof by the policemen was that the ex-husband of Mrs. Caves had come to them about 1:30 a. m. and reported that Mrs. Caves and Hill were occupying a room in the Columbia Hotel; that they went to the room in question but found it empty; that about 4:30 or 5 a. m. the ex-husband came to them again and said that he had seen Hill and Mrs. Caves enter the hotel and so they returned to the room and found them there together.

The proof also showed that the petitioner and Mrs. Caves had each been given the first test for venereal disease and that results of the test were negative. However, under the rules of the clinic, persons held for examination were required to remain in quarantine for 48 hours so that a further examination could be made. This second examination was required on the theory that the person held might have been exposed to a venereal disease just prior to the arrest, which might not be detectable until after 48 hours had passed.

The statutes of Oklahoma conferring authority upon the police judge to order any person convicted in the police court for a sex offense to be held for the purpose of determining if such person is infected with a venereal disease, 63 O.S. 1941 § 548, with amendments thereof, have been before this court for construction and such statute has been upheld. Ex parte Fowler, 85 Okla. Cr. 64, 184 P. 2d 814; Ex parte Woodruff, 90 Okla. Cr. 59, 210 P. 2d 191.

The petitioner is not attacking the constitutionality of the statute in question, but simply contends that it does not apply to him under the factual situation presented. In Ex parte Fowler, supra, this court specifically held

that a person restrained of his or her liberty had a right on habeas corpus to show that there were no facts which would justify the restraint. The case of Ex parte Arata, 52 Cal. App. 380, 198 P. 814, 816, was quoted with approval as follows:

"Where a person so restrained of his or her liberty questions the power of the health authorities to impose such restraint, the burden is immediately upon the latter to justify by showing facts in support of the order. It might be proved, for instance, that the suspected person had been exposed to contagious or infectious influences; that some person had contracted such disease from him or her, as the case might be. Such proof would furnish tangible ground for the belief that the person was afflicted as claimed. And we wish here to emphasize the proposition, which is unanswerable in law, that a mere suspicion, unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all for depriving persons of their liberty and subjecting them to virtual imprisonment under a purported order of quarantine.

"Coming then to a case where it is claimed that the person suspected is one whose habits are such as to warrant the belief that they are afflicted with a venereal disease: We may agree that in cases of persons who commit acts of prostitution—that is, acts that are commonly understood to fall within the 'commercial vice' definition—such a majority of them may be afflicted with infectious venereal disease as to justify the health department in enforcing the preliminary quarantine measures as here shown against any such; in other words, that, based upon the experience of the health authorities as it is stated to be in the return, it is reasonably probable that a person found to be of the class mentioned is so infected with such disease. The presumption which this statement allows to be made as against the individual in the first instance has its foundation in the fact that women of ill fame, by the very nature of their occupa-

tion, indulge in repeated and promiscuous acts of sexual intercourse."

In the instant case the city officials concede that Jewel Caves does not have a history or reputation of being a prostitute. The record would support the conclusion that she and Hill had been intimate but there was nothing to indicate that she had associated with any other man. They were together in Hill's room, which he was occupying as a home. The only reason the officers made the arrest was because of the complaint to them by the ex-husband of Mrs. Caves. The conduct of Hill and Mrs. Caves cannot be condoned nor approved, but the statute authorizing a city to hold persons suspected of being afflicted with a venereal disease for examination by the venereal health clinic cannot be used for the purpose of giving additional punishment to the parties. There are laws against their conduct which provide ample punishment for their misdeeds without resorting to a subterfuge in order to give them a few days imprisonment in the city jail.

Upon the facts before us it appears that petitioner having satisfied the fine and costs assessed against him that further restraint in the city jail was arbitrary and oppressive and that petitioner is entitled to his discharge.

It is so ordered.

BRETT and POWELL, JJ., concur.