JOSEPH E. SEAGRAMS & SONS, INC.; Austin, Nichols Distilling Company, Inc.; William Grant & Sons, Inc.; Fromm & Sichel, Inc.; and The American Distilling Company, Inc., Appellees/Cross-Appellants,

v.

OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, Stuart Carey, dba Metro Beverage Company, Appellants/Cross-Appellees.

No. 50876.

Supreme Court of Oklahoma.

Nov. 10, 1981.

As Corrected Nov. 18, 1981.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., Oklahoma City, for appellant/cross-appellee.

Burck Bailey, Fellers, Snider, Blankenship & Bailey, Oklahoma City, for appellees/cross-appellants.

PER CURIAM:

This appeal arises from appellee's petition for declaratory judgment to construe 37 O.S.1971, § 536.1, Oklahoma's liquor price affirmation statute, and to test the validity of Article III, § 24, of the Rules and Regulations of the Oklahoma Alcoholic Beverage Control Board. We affirm the trial court's

narrow construction of "distiller" in § 536.1 as including resident and non-resident distillers. Further, we affirm the trial court's declaration of the invalidity of Article III, § 24 on the grounds that the Alcoholic Beverage Control Board exceeded its authority in disallowing such suppliers recovery of handling and transportation costs. We reverse only on the question of who should bear the cost of affixing tax stamps to bottles sold in Oklahoma.[1]

In September, 1976, the Director of the Oklahoma Alcoholic Beverage Control Board (ABC Board) sent memoranda to appellee-sellers advising them of the Attorney General's Opinion No. 76–112 construing 37 O.S.1971, § 536.1. Section 536.1 reads:

"Limitation on price of distiller's sales. No distiller shall sell alcoholic beverages to a wholesaler licensed under the Alcoholic Beverage Control Act at a rate higher than the lowest rate at which such distiller sells in any other state."

In construing this statute, the Attorney General's opinion stated that it required price affirmation from all alcoholic beverage licensees selling spirits to Oklahoma wholesalers. In addition, the opinion declared that such licensee could neither recover handling costs in transporting their merchandise from manufacturing points to warehouses in Oklahoma or elsewhere nor could they make any charge for affixing tax stamps to bottles sold in Oklahoma.

The ABC Board's Director advised appellees of these changes wrought by the Attorney General's opinion and warned that any non-resident seller who failed to follow its dictates would be issued a citation. Appellees filed suit. Subsequently, the ABC Board formally adopted the Attorney General's construction of § 536.1 in Article III, § 24, of their Rules and Regulations.[2]

---

1. 37 O.S.1971, § 540(a) requires tax stamps to be posted on bottles before they are sold to retailer.

2. Art. III, § 24, of the Alcoholic Beverage Control Board Rules and Regulations reads in pertinent part:

 "REQUIREMENT THAT DISTILLERS, RECTIFIERS, AND NON–RESIDENT SELLERS OF SPIRITS, CORDIALS AND SPECIAL-

 TIES SELL TO OKLAHOMA WHOLESALERS AT THE LOWEST PRICE FOR WHICH SUCH ITEM OF ALCOHOLIC BEVERAGE IS SOLD TO ANY WHOLESALER IN ANY OTHER STATE.

The trial court made the following findings:

(1) Article III, § 24, is invalid as beyond the power and authority of the Board.

(2) Distillers must post prices with the Board from the distiller's selected FOB point at the lowest FOB price at which it sells the same merchandise in any other state plus or minus any difference in cost to the distiller demonstrated to the Board.

(3) § 536.1 has application only to a distiller; however, it applies to a distiller regardless of where the manufacturing facilities of the distiller may be located.

(4) Each of the non-resident sellers is deemed a distiller with the exception of Grant and Sons, Inc., and Fromm and Sichel, Inc.

## I.

The Legislature has delegated broad authority to the ABC Board to regulate all phases of the sale, distribution, and possession of intoxicating liquor in order to carry out the purposes of the Oklahoma Alcoholic Beverage Control Act, 37 O.S.1971, § 514. *Hart v. Parham*, Okl., 412 P.2d 142 (1966). *Hart* defines the intent of the legislature in creating the Act as follows:

"Upon examination of the Act as a whole, we think that it clearly expresses an intent on the part of the Legislature that, within the framework of strict regulation which the liquor industry requires, the commercial aspects of the industry shall be operated under the conditions of free and unrestricted competition. The Act is replete with provisions directed to this objective." (p. 148)

The crucial question here is whether the requirement of including transportation costs and the cost of affixing tax stamps is necessary to effectuate the purposes of the Act. If so, the legislature has delegated the requisite authority to the Board; if not, no such delegation was intended.[3]

■ We hold that the cost of affixing tax stamps, distinguished from the actual cost of stamps, to bottles as mandated in 37 O.S.1971, § 540(a) is a legitimate cost suppliers must bear doing business in Oklahoma and should be included in the affirmed price. We believe, however, that the Board's Rule resulting from its construction of § 536.1 to include transportation and handling costs is in conflict with the policy enunciated in *Hart*—that "the commercial aspects of the industry shall be operated under the conditions of free and unrestricted competition."

We agree with the trial court that the posted prices (with the exception of stamp affixing costs which should be charged to the supplier) should be the lowest FOB price at which it sells the same merchandise in any other state, *plus or minus any difference in transportation and handling costs demonstrated to the Board.*

In *Oliver v. Ok.ABC Board,* Okl., 359 P.2d 183 (1961), the Court held that the Board did not have the power or jurisdiction to fix or control the prices of alcoholic beverages at retail. *Oliver* illustrates that the Board, though it has broad power, must remain subordinate to the dictates of the legislature. If the legislature wishes to define price to include other factors, it should do so. If "price" or "rate" in § 536.1 is construed as simply invoice price, the purpose behind the price affirmation stat-

A. All distillers, rectifiers and non-resident sellers of distiller spirits, cordials and specialties who are licensed by the Board are required to register with the Board all items of alcoholic beverages offered for sale in this state at prices no higher than the lowest price at which any such item is being offered for sale, or sold, to any wholesaler, anywhere in any other state.

B. The affirmed price at which any such item is being offered for sale or sold shall mean the lowest price at which such item is

offered for sale by the same or any other supplier. Furthermore, the affirmed price must be the total invoice price charged to Oklahoma wholesalers inclusive of any transportation, handling, stamp affixing, or other charges (except Oklahoma Tax) incurred in making the product available to Oklahoma wholesalers at the F.O.B. point.

3. *Ex Parte Woodruff*, 90 Okl.Cr. 59, 210 P.2d 191 (1949); *Boydston v. State*, Okl., 277 P.2d 138 (1954).

ute will not be totally circumvented, as feared by appellant. As the trial court suggested, the Board will have the authority to oversee whether added costs are legitimate and reasonable.

The affirmation statutes of other states include express language defining the types of factors to be included in determining the affirmed price. Because our legislature has not specified factors to be included in the posted or affirmed price, we decline to add any terms to the statute. We construe price to mean the base or invoice price.

Appellant urges us to follow the lead of Kansas in *Laird v. Cheney*, 196 Kan. 675, 414 P.2d 18 (1966).

We decline to accept the Kansas decision as controlling here. The Kansas statute possesses specific guidelines that the Oklahoma statute does not. Not only does it contain an express policy statement,[4] but it makes clear to whom its regulations apply; namely, to "manufacturers and others authorized to sell alcoholic liquors to licensed distributors." More importantly, the Kansas statute includes factors the legislature deemed appropriate for inclusion in the posted price:

> "The prices filed by manufacturers and others authorized to sell alcoholic liquors to licensed distributors, pursuant to subsection (1) of section 41–1101 of the General Statutes Supplement of 1959, shall be the current prices, F.O.B. point of shipment, and said price as filed by each manufacturer or vendor shall be as low as the lowest price for which the item is sold anywhere in any state in the continental United States by such manufacturer or vendor: Provided, That in determining the lowest price for which an item of alcoholic liquor is sold in any such state there shall be taken into consideration all advertising, depletion and promotional allowances and rebates of every kind, whatsoever made to purchasers in such state by the vendor." Section 2, (K.S.A. 41–1112).

4. The statute requires price affirmation, "In the public interest and in order to promote the orderly sale and distribution of alcoholic liquor,

In Kansas, the *legislature* named the types of factors to be included in the posted "lowest price," not the local ABC Board. We hold that the Oklahoma ABC Board exceeded its authority in adding transportation and handling costs. In so holding, we attempt to carry out the intent of our Legislature with the raw materials they have given us. We cannot add terms *not essential to carrying out legislative intent*. We will not allow the ABC Board to do so. Although the legislature has made clear its intent to require some type of price affirmation in Oklahoma, it has not spoken on any factors that must be included in an affirmed price. We agree with the view expressed in *Oklahoma Alcoholic Beverage Control Bd. v. Moss*, Okl., 509 P.2d 666 (1973) on the limits of ABC Board power:

> "However, there is a limit to the rule making authority of the Board. Before a rule can be considered to have a level of dignity equal to that of a statutory enactment, it is elementary the rule must be such as the Board was empowered to adopt. The legislature cannot delegate authority to an administrative board to subvert or *amend* a statute." (emphasis added) (p. 666)

## II.

The problem remains: to whom does § 536.1 as written apply? Because the statute in question is vaguely written, we choose to construe narrowly, doing justice to legislative intent yet refusing to go beyond intent as *expressed* in the Alcoholic Beverage Control Act. Historically, in the area of alcoholic control, the court gives special deference to the legislative body.

> "It is not within the province of this Court to determine the advisability or wisdom of price discounts in the sale of alcoholic beverages. That is a matter for determination by our legislature in fulfilling its responsibility to provide strict control and regulation of traffic in intoxicating liquor." *OABC Bd. v. Central Liquor Co.*, Okl., 421 P.2d 244 (1966).

to foster temperance and to promote the public welfare, in the state of Kansas . . ."

Appellees urge that a distiller is one who possesses a distiller's license and that because appellees possess non-resident seller licenses and are prohibited from possessing both types of licenses, it is logically impossible for a holder of a non-resident seller's license to be a "distiller". We cannot agree; to do so would be to break a cardinal rule of statutory construction, i. e., the legislature will not be presumed to do a vain and useless act. *Moral Insurance Company v. Cooksey*, Okl., 285 P.2d 223 (1955). Statutes may not be construed to obtain an absurd result. *In re Kyle's Autopsy*, Okl., 309 P.2d 1070 (1957); *State v. Longmire*, Okl., 281 P.2d 949 (1955). If our Court were to declare "distiller" as applicable only to Oklahoma distillers, we would completely frustrate the purpose of the statute. It should be noted that when the statute was adopted, the one Oklahoma distiller in existence constituted one-tenth of one per-cent of the market in the state. Were we to apply § 536.1 to such a small segment of the market, the purpose of the statute—to foster price competition among suppliers to Oklahoma wholesalers and to make any price discrimination or favoritism against Oklahoma wholesalers unlawful—would be defeated.[5]

Though we know the *general* intent of the legislature in drafting § 536.1, *specific* intent (i. e., to whom other than distillers it should apply) is nowhere clearly expressed. We are constrained, therefore, to construe the statute narrowly. According to 37 O.S. 1971, § 506(9) "distiller" includes both resident and non-resident distillers:

> " 'Distiller' means *any person* who produces spirits from any source or substance, or *any person* who brews or makes mash, wort, or wash, fit for distillation or for the production of spirits (except a person making or using such material in the authorized production of wine or beer, or the production of vinegar by fermentation), or *any person* who by any process separates alcoholic spirits from any fermented substance, or any

person who, making or keeping mash, wort, or wash, has also in his possession or use a still." (Emphasis added)

The legislature may very well have used the word "distiller" because the distiller is the beginning point of the marketing process and intended the word as shorthand for *all suppliers*, as the Attorney General suggests. Were we to adopt the reasoning of the Attorney General's considered opinion, however, we would be writing a price affirmation law, not construing one.

We affirm the trial court except as to the cost of affixing Oklahoma tax stamps.

BARNES, V. C. J., and HODGES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

IRWIN, C. J., and LAVENDER and OPALA, JJ., concur in part, dissent in part.

---

5. The constitutionality of price affirmation statutes per se has been upheld in the past and need not be discussed here. *Seagram v. Hostetter*, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); *Laird v. Cheney*, 196 Kan. 675, 414 P.2d 18 (1966).